## CYRENUS D. STONE

*v.*

## JOHN F. WOOD.

| 85 | 603 |
| 157 | 40 |
| 85 | 603 |
| 75a | 224 |
| 85 | 603 |
| 187 | 4160 |
| 85 | 603 |
| e212 | 4379 |

1. FRAUD—*by wife, in procuring conveyance from her husband.* ˙Where a wife fraudulently and deceitfully represented to her husband, then residing in a different locality from her, that, if he would put the title to his house and lot in her name, she could sell the same for a certain price, and would pay his debts and join him, giving him the surplus, and afterwards wrote him that she had made a sale, and thereby procured him to unite in a deed of the property to one she represented as a purchaser, but who, in fact, took the conveyance in trust for the wife, when she should reimburse him for some moneys loaned her and liabilities incurred, and the proof showed that the wife was untrue to her husband, and the grantee was a party to the fraud to deprive the husband of the property, it was *held,* that the conveyance of the husband was properly set aside, and also a purchase by such grantee of the property under a judgment bought by him against the husband, the proof showing that the rents of the property exceeded the sums paid by such grantee.

2. HUSBAND AND WIFE—*when husband's conveyance makes his wife owner of property.* If a husband conveys real estate to a third person for the purpose of vesting it in his wife, it will become her separate property as against him, but this is not the case when the conveyance is made to enable the wife to sell the property for her husband's benefit.

3. ERROR—*party can not assign for error what does not affect his rights.* A party to a suit can not urge, for a reversal of a decree, an error, as against another party, which in nowise affects his interests or rights.

4. CHANCERY—*relief, between husband and wife, for fraud.* Where either husband or wife becomes untrue to the other, and, by fraud, obtains an unjust advantage over the other, a court of equity will as readily afford relief as it will between other persons not occupying that relation.

5. CHANCERY PRACTICE—*as to considering evidence.* In chancery cases, it will be presumed that the chancellor decides upon the legitimate evidence in the record on the hearing, and rejects what is irrelevant.

6. EVIDENCE—*its relevancy.* In a suit by a husband against his wife and another to whom she had procured a conveyance of real estate to be made, to have the same set aside as obtained by fraud and conspiracy, proof of the infidelity of the wife is not irrelevant. While it would not of itself prove fraud, it will be a strong circumstance in connection with others to establish that fact.

7. SETTING ASIDE SALE *for fraud—adjustment of claims.* Where a sale was set aside as being procured by fraud, it was *held,* that the amount of

a judgment and costs paid by the grantee, which was a lien on the property, should be allowed him in stating the account of the rents and profits chargeable to him.

APPEAL from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. DOUGLASS & HARVEY, for the appellant.

Messrs. HANNAMAN & WILLOUGHBY, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

In September, 1870, John F. Wood, who was residing in Galesburg, went to Bloomington to work, leaving his wife at home. Whilst there, his wife visited him on several occasions, and falsely represented to him that she had an offer of $1800 for the house and lot in controversy, and that it would be unsafe for him to return to Galesburg; that if the title to the property were placed in her name, she could sell it without sending to him for a deed, and that when she should sell the property she would pay his debts, and with the balance they would go west and purchase a home. She advised him to go to Lincoln, Nebraska, promising that when the property should be sold she would join him at that place. He was thus induced to convey the property to Thomas Sabin, who conveyed it to Mrs. Wood. He soon after this went to Lincoln, Nebraska, where he arrived in August, 1871. Early in the next month Mrs. Wood went to Lincoln, and remained a short time with her husband. She then assured him that she would sell the property, pay his debts and take to him the balance of the money. After returning. she wrote him that she had sold the property to Stone for $1000. $500 to be paid down, which she would bring to him, and the remainder to be paid the first of June following. She sent with the letter a deed for him to execute, which he did on the 21st of December, 1871, and returned it to his wife. She had, but a few days previously, executed and delivered to Stone a deed by her alone for the property, but, learning that it was necessary for

her husband to join in its execution, the deed sent to him was prepared for him to execute. Soon after he returned the deed, she went to him in Nebraska, where he had rented a house and placed their furniture therein, which she had sent to him. After remaining a short time, Mrs. Wood returned to Galesburg, and remained there until the latter part of February following, when she again joined him at Lincoln. She, at that time, represented to her husband that she had received no money, and she could get none unless he would make an affidavit that she had a certain amount of interest in it by reason of her having paid a mortgage. He signed the affidavit. She then induced him to go to Lawrence, Kansas, promising to join him there, but instead thereof she returned to Galesburg. Soon after, appellee returned to Galesburg, and claims to then have learned that his wife was and had been untrue to him from the time he had first left that place. The evidence, we think, clearly establishes this fact.

On the 10th day of June, 1872, Stone executed and acknowledged before a police magistrate of Galesburg an instrument, in writing, by which it was recited that he had advanced and loaned to Mrs. Wood $173.80, and agreed that when she should pay the same, the deeds made by her and her husband should be void. Another writing, similar in character to this, was also executed by Stone and acknowledged before the same officer, in which he declares that no part of the consideration named in the deed of Wood and wife to him had been paid, but he had loaned Sarah M. Wood, from time to time, sums of money amounting to $173.80, for which he held her promissory note, and when it should be paid and he released from liability, and when all conditions therein should be complied with, the deeds should be " deemed and held as absolutely void, and, in the meantime, are held as a mortgage security for said indebtedness and liabilities hereinbefore mentioned."

The bill was originally filed against Stone alone, but at the return term he demurred, because Mrs. Wood was not made a party, and the demurrer was sustained, the bill amended and she made a party defendant. Answers were filed and repli-

cations put in, proofs made and a hearing had thereon, when the court found that the conveyance obtained from Wood was procured by fraud, and decreed that Stone reconvey the property to him. A reference was made to the master, who stated an account of rents that were or could have been received by Stone, and allowing him for repairs and all money advanced, and, on striking a balance, he was found to be indebted to Wood in the sum of $105.48, and decreed that he pay it, and, in default thereof, that execution issue to collect the same. Thereupon Stone appeals.

It is, first, insisted that Stone purchased in good faith. It is true, that he, Mrs. Wood and Ekin all so testify, but an examination of the evidence satisfies us that the transaction was fraudulent, and only colorable to enable Mrs. Wood to hold the property as against her husband; that she acquired it from her husband by fraud, and Stone then, or afterwards, became a party to the fraud. He, when he acquired the deed, took it without examination of the title, and only had an abstract thereof, made some days afterwards. He, according to the proof, could not have paid more than $100 on the delivery of the deed, and only made advances afterwards to the amount, in all, of $323.80, and $150 of that sum was in the purchase of a judgment under which he procured to be sold and purchased in the property at sheriff's sale, and subsequently received a deed thereunder. He gave no notes, mortgage on the property or other security for the payment of the purchase money; nor does it appear that any definite time was agreed upon for its payment, by instalments or otherwise. Again, appellant gave an instrument in writing in which he stated that he had loaned Mrs. Wood $173.80, which, when paid, should render the deeds made by her and her husband to him absolutely void. Appellant then let her into possession of the property, and it was proved that he admitted he did not own it, but held it for Mrs. Wood; nor does he offer to pay for it or secure the purchase money, but is endeavoring to hold it on the partial payments he claims to have made. These circumstances, to our minds, most clearly overcome the

evidence of these witnesses. It is impossible for us to believe that they can exist unexplained, as they are, and Stone's purchase be fair and *bona fide.* They unerringly indicate that he only held the property for Mrs. Wood, and not for himself.

Ekin testifies that the sale was made in good faith, but, so far as we can see, this is but an expression of his belief. He appears to have acted as the agent of Mrs. Wood in effecting the sale; and he says the property was worth $1400, when there is no pretense that appellant was to give but $1000; and Ekin, notwithstanding he was Mrs. Wood's agent, testified that he offered to go into the purchase of the property with Stone, at $1000, the consideration named in the deeds. He thus shows himself, if really her agent, regardless of her interest, as he would as agent be bound to protect it, and would not be allowed to speculate on the property.

It is, however, claimed that appellant paid Mrs. Wood $173.80, and $150 on Detritch & Hoover's judgment on the attachment against the property, towards the purchase. The money was, no doubt, so paid, but he may have had it in his hands from the rents, so far as he made advances to her, or knew he would be soon reimbursed the amount from that source; and he seems to have taken an assignment of the judgment, and had the property sold and become the purchaser, so that he could thus be doubly secure in making the advance. If intended as a payment, why sell the property? We can see no sufficient reason for such a course. If he owed the money for the property, why not pay it? Why sell the property when he had already purchased it and owed the money? In any view we can take of the circumstances developed by the evidence, we are unable to hold that Stone was a purchaser in good faith, but they satisfy us that he, for some reason, and most probably to aid Mrs. Wood in the fraud she was perpetrating on her husband, became the nominal owner of the title, to be afterwards restored to her, as he agreed it should, on her paying him the $173.80 he had advanced her.

It is next urged that appellee conveyed the property to his wife, and he is thereby estopped from recovering back the

title. If the conveyance had been made by him for the purpose of vesting the title in her, to hold as her sole and separate property, then the proposition would be true; but we are satisfied, from the evidence, that such was never contemplated by him. He testifies that it was conveyed to enable her to sell it, pay his debts and return to him the balance of the money. This, she does not deny, but says it was conveyed to her because her money paid for it; but of the $2100 he gave for the property, the evidence shows that she only paid $330, to release a mortgage with which the property was encumbered; and it is not claimed that there was any understanding, at that time, that the property was to be conveyed to her. The first we learn of such an arrangement is when Mrs. Wood visited her husband at Bloomington, when she told him, if he returned to Galesburg he would be arrested, and his life would be in danger, and proposed that the property be conveyed to her, that she might sell it, pay his debts and with what remained purchase a home in the west. Her paying but little over one-seventh of the cost of the house gave her no right, in law or equity, to have the title to the property; and she has received back from appellant $173.80, to which she was not entitled; so she is only out $156.20. Nor has she appeared and assigned error because that sum was not decreed to her; nor can appellant, even if she is entitled to it, urge it for reversal, as it in nowise affects his interests or rights.

Mrs. Wood inducing her husband to remain in Bloomington; to go to Lincoln, Nebraska, to there rent a house and to remove the household goods there; her then inducing him to go to Lawrence, Kansas, when she, with their goods, returned to Galesburg, instead of joining him—all has the appearance of a scheme to keep him from returning to Galesburg and learning the true condition of the pretended sale. In fact, the entire evidence considered, we are unable to resist the conclusion that she contrived the whole scheme to procure the title to this property, and, by fraud and misrepresentation, succeeded in accomplishing her purpose.

It is, however, urged that, in his affidavit, appellee stated his wife had paid, of her own means, towards the purchase of the house, two mortgages, which are claimed to have amounted to $600 or $700. In her deposition, Mrs. Wood only claims that it was one mortgage; nor does she state in whose favor it was held, but she claims it was for $500. We believe, in this, she was mistaken, as Frost swears that she paid one, and that was $330. This must be that to which she refers. He may have sworn recklessly, but if so, it was by her procurement, and by making false statements. as the record does not disclose how it became necessary that he should make the affidavit to obtain the money, as she represented to him it was; nor can we see how it could, under any circumstances, have been required. She proved by Frost the payment of his mortgage with her money, but no effort was made to prove the Webster mortgage was thus paid.

There can be no doubt that a man may have relief from such frauds as this, in equity, against his wife. So may the wife against the husband. There is nothing in the marriage relation that can prohibit it. If it were not so, there would be a wrong without a remedy. That courts are seldom called on in such cases, does not militate against the rule. It is a fraud that is not sanctified by that relation. When either party becomes untrue to his or her vows and marital duties, and by fraud obtains an unjust advantage of the other, equity will as readily afford relief as it will between other persons not occupying that relation.

It is urged that the evidence in reference to Mrs. Wood's chastity was irrelevant and should have been excluded. Concede this to be true, still it was not error requiring a reversal. The practice in chancery cases is, to decide them on the legitimate evidence before the chancellor, without regard to what may not be proper. The court does not consider the irrelevant or improper evidence on the hearing. The chancellor is presumed to know what shall be rejected. and what shall not, as well on the hearing as on a motion to exclude; and on appeal, if the legitimate evidence sustains the decree, it will be

affirmed, but if not, then it will be reversed. This rule has been repeatedly announced by this court.

But we are not prepared to hold that it was irrelevant, as showing the relations between her and her husband. If not chaste and true to him, or if improper relations existed between her and appellant, then it would be more reasonable to suppose that she, with appellant, would enter into a conspiracy to defraud the husband, than if she were chaste, affectionate and true to her husband. It would not, of itself, prove fraud, but would be a strong circumstance in connection with others. And inasmuch as she was a party defendant to the suit, and her equitable claim to the land, as against her husband, was involved, we can not say the evidence was improper. It tended to characterize, to some extent at least, her acts in acquiring the conveyance to herself. All the evidence considered, we are clearly of opinion that it required the decree for the reconveyance of the property to appellee, and in that regard it is correct.

It is claimed by appellant that he should have been allowed the sum of $43.05, costs, paid to Detritch & Hoover when he purchased and took the assignment of the judgment in the attachment suit against the house and lot. He swears he paid that sum as costs in addition to the $150 he paid to purchase the judgment. These costs were a valid lien on the land, to satisfy which it could have been sold. The payment was made to discharge the lien and preserve the title, and that sum, with interest, should have been allowed him as a credit in stating the account. The interest on that sum for three years, which we infer was the period the money was paid before the account was stated, would be $7.75, which, added to the sum thus paid, aggregates $50.80, which, deducted from the balance found by the master, of $105.48, leaves $54.68, the amount he should be charged. The decree is so modified as to require him to pay only that sum, as a balance due from him to appellee, and the decree is in all other things affirmed.

*Decree affirmed.*

Mr. JUSTICE CRAIG took no part in the decision of this case.