WILLIAM GOELZ, Jr., *et al.*

*v.*

WILLIAM GOELZ.

*Filed at Ottawa April 1, 1895—Rehearing denied October 15, 1895.*

1. WITNESSES—*competency of plaintiff against grantees of deceased person.* A suit against grantees of a deceased person, which is not defended by the executor, heirs, legatees or devisees of the deceased, is not one in which the plaintiff is prohibited, by the statute, from testifying in his own behalf as to personal transactions with the deceased.

2. EVIDENCE—*declarations of deceased wife to her husband not admissible.* Testimony of a plaintiff in regard to conversations with his deceased wife is inadmissible in an action against her grantees, under the statute restricting the testimony respecting such conversations to suits between husband and wife.

3. SAME—*presumption as to delivery of trustee's deed.* The presumption is that a trustee's deed of land, on a sale for cash, was not delivered until payment was made of all the purchase money bid at the sale.

4. SAME—*purchase of land by husband in name of wife—presumption.* The purchase of land by a husband in the name of his wife will, *prima facie,* be presumed to be an advancement or settlement, and not a trust.

5. TRUSTS—*transfer of notes to raise purchase money may raise resulting trust.* The transfer of notes the proceeds of which were used in paying part of the purchase price of land at a trustee's sale, which was made for cash, is part of the original transaction, within the rule as to resulting trusts in favor of those furnishing the purchase money. *Alexander* v. *Tams,* 13 Ill. 221, and *Reed* v. *Reed,* 135 id. 482, distinguished.

6. SAME—*proof to raise resulting trust must be clear.* Proof to raise a resulting or implied trust must be entirely clear and satisfactory, and incapable of reasonable explanation upon any other theory than the existence of such trust.

7. SAME—*husband furnishing part of purchase money of land conveyed to wife—laches.* A man who furnished part of the purchase money for land conveyed to his wife with his consent, on a purchase by their son at a trustee's sale, cannot, several years subsequently, on separating from his wife, claim a trust in the land.

APPEAL from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

MILFORD J. THOMPSON, for appellants:

A defense peculiar to courts of equity is founded upon the mere lapse of time and staleness of the claim. The doctrine is always fully recognized. *Pratt* v. *Pratt,* 9 Pet. 416; *Prevost* v. *Gratz,* 6 Wheat. 481; *Beach* v. *Shaw,* 57 Ill. 25; *Rogers* v. *Simmons,* 55 id. 82.

A court of equity will treat a lapse of time less than that provided by law, as sufficient to bar recovery for *laches,* where there is unexplained neglect. *Castner* v. *Walrod,* 83 Ill. 175; 2 Story's Eq. Jur. sec. 1520; *Lequatte* v. *Drury,* 101 Ill. 82; *Jones* v. *Smith,* 33 Miss. 215; *Scott* v. *Freeland,* 7 S. & M. 419; *Campan* v. *Van Dyke,* 16 Mich. 371; *Rogers* v. *Rogers,* 2 Wall. 87.

Legal presumption is against fraud, and therefore the party charging it must establish it. 2 Pomeroy's Eq. Jur. p. 281; sec. 817, p. 415, and secs. 917, 967; Kerr on Fraud, 305.

Section 2, chapter 51, of Starr & Curtis' Statutes, prohibits a party testifying where the adverse party sues or defends as heir, executor, legatee or devisee. *Green* v. *Dietrich,* 114 Ill. 636; *Ferbrache* v. *Ferbrache,* 110 id. 210; *Ebert* v. *Gerding,* 116 id. 216.

A plaintiff is only competent to testify in his own behalf where defendants are not defending in any pecuniary capacity. *Insurance Co.* v. *Peck,* 126 Ill. 493, and cases cited.

After the legal title has once passed, without fraud, to the grantee, it is impossible to raise a resulting trust. The subsequent application of the funds of a third person in satisfaction of unpaid purchase money is of no weight. *Alexander* v. *Tams,* 13 Ill. 221; *Rogers* v. *Murray,* 3 Paige, 398; *Perry* v. *McHenry,* id. 227; *Green* v. *Cook,* 29 Ill. 193.

A resulting trust can only arise in favor of a person who furnished the consideration money, or some aliquot part thereof, at the time the purchase was made. *Fleming* v. *McHale,* 47 Ill. 282.

After the legal title has vested, and there is no proof of fraud, a resulting trust can not arise in favor of a third

party, even though he paid unpaid purchase money. *Botsford* v. *Burr*, 2 Johns. 405; *Walter* v. *Klock*, 55 Ill. 362.

In *Reed* v. *Reed*, 135 Ill. 482, the court says: "A trust can only arise from the original transaction at the time it takes place, and at no other time. The funds must be advanced and invested at the time the purchase is made." See, also, in support of the above authority, *Allcock* v. *Byman*, 17 Wall. 44; *White* v. *Carpenter*, 2 Paige, 17; *Wheeler* v. *Kirkland*, 23 N. J. Eq. 13.

If there is competent evidence in the record sufficient to sustain the decree, it must be affirmed. If not, it must be reversed. *Treleaven* v. *Dixon*, 119 Ill. 548; *Tunison* v. *Chamblin*, 80 id. 382.

FREDERICK A. HERRING, and JOHNSON, HERRING & BROOKE, for appellee:

Where a person occupying a fiduciary relation purchases property with trust funds and takes title in his own name, a trust in the property will result. *Massie* v. *Watts*, 6 Cranch, 148; *Weaver* v. *Fisher*, 110 Ill. 146.

Wherever property which is already impressed with or subject to a trust of any kind, express or by operation of law, is conveyed or devolves from a trustee to a third person who is a mere volunteer, then the rule is universal that such voluntary transferee acquires and holds the property subject to the same trust which before existed, and becomes himself a trustee for the original beneficiary. Pomeroy's Eq. Jur. sec. 1048; *Kusch* v. *Kusch*, 143 Ill. 357.

Mere lapse of time, however great, will not bar a recovery, if an excuse therefor be given which takes hold upon the conscience of the chancellor, and is such as renders it inequitable that the bar should be interposed. *Harris* v. *McIntyre*, 118 Ill. 289; *Wormsley* v. *Wormsley*, 98 id. 544.

Delay in instituting proceedings, where the parties are members of the same family, is not so strictly regarded as when they are strangers to each other. *Yeaton* v. *Yeaton*, 4 Ill. App. 579; *Carpenter* v. *Carpenter*, 70 Ill. 457.

Lapse of time is only one of many circumstances from which the conclusion of *laches* must be drawn, and each case must be determined in the light of the particular facts shown. *Boone* v. *Childs*, 10 Pet. 177; *Baker* v. *Reed*, 18 Beav. 398; *Michoud* v. *Girod*, 4 How. 261; *Carpenter* v. *Canal Co.* 35 Ohio St. 307; *Prevost* v. *Gratz*, 6 Wheat. 481; *Reynolds* v. *Sumner*, 126 Ill. 70.

Mr. JUSTICE BAKER delivered the opinion of the court:

In 1880 William Goelz, the appellee, was residing with his wife, Josephine Goelz, at Bowmanville, in Cook county, Illinois. He was a German by birth and a physician by profession, and had accumulated some property. He was at that time sixty-one years of age, and his wife was several years older. They had three living children, —William Goelz, Jr., about thirty-three years old, Carl August Goelz, a few years younger, and a daughter, Dorothea F. Goelz, since intermarried with one August Grossman. William Goelz, Jr., and Carl August Goelz, were married men, Louisa Goelz being the wife of the former and Anna Goelz the wife of the latter. William Goelz, Jr., had no property or money, and was working for a very small compensation and on commissions in the real estate office of B. F. & M. Weber, in Chicago.

The premises in controversy in this suit are ten acres of land in the town of Lake View, in Cook county. On the 12th day of February, 1880, said ten acres were sold at public vendue at the south main entrance door of the Criminal Court building in Chicago, by one Edmund Knauer, trustee, under a trust deed executed by John Krummenacher and wife to secure the payment of a note for $2000, and interest. William Goelz, Jr., had learned of the proposed sale some days prior to the date it was advertised to take place, and that the property could probably be bought for the amount of the debt, interest and expenses of sale, and informed both his father and his mother in regard thereto. He attended the sale, taking with him

a certified check for $300, dated said 12th day of Feb-
ruary, 1880, signed by Bernard F. Weber, and payable to
"Edmund Knauer (trustee) or order." He bid in the prop-
erty for $2400 in the name of his mother, Josephine Goelz,
and delivered to Knauer, the trustee, the check for $300,
in part payment of the purchase money. The trustee
thereupon made to Josephine Goelz a trustee's deed for
the land. The deed bears date February 12, 1880, was
acknowledged April 28, 1880, and was filed for record on
July 19, 1880. The residue of the purchase money was
paid to the trustee by William Goelz, Jr., in March and
April, 1880, he having obtained most of the money neces-
sary for so doing by getting Bernard F. Weber to cash
certain notes secured by mortgages, and known as the
Deinzer note for $1090, the Zender note for $600, and the
Beil note for $200. It seems that William Goelz, the
father, was the owner of each and all of said last men-
tioned notes. It also satisfactorily appears that prior to
the trustee's sale William Goelz, Jr., had arranged with
Weber to cash the notes in the event he bought the
property.

About the time of the above transaction, or shortly
thereafter, Josephine Goelz met with an accident by which
a leg was broken. She afterwards suffered greatly from
the rheumatism, and her lower limbs were paralyzed, and
the latter five years of her life she was a confirmed inva-
lid. She and her husband gradually became estranged
from each other, until, finally, they were not even on
speaking terms.

In 1884 appellee was told that his wife had executed
a will, in which she had devised the land in question.
Thereupon, on the 12th day of September, 1884, he exhib-
ited the original bill filed herein, making his wife and his
son William Goelz, Jr., parties defendant thereto. Jose-
phine Goelz had not, in fact, made a will, but on the 26th
day of July, 1884, she had executed and acknowledged a
deed by which she conveyed the south half of the land to

William Goelz, Jr., and had also executed and acknowledged a certain other deed, by which she conveyed the north half of the premises to Carl August Goelz. Both of said deeds were delivered and filed for record on said 26th day of July, 1884, and each deed states, on its face, that it was made for the consideration of one dollar and for other good and valuable considerations.

The substance of the original bill was, that complainant gave to William Goelz, Jr., $2400, and directed him to purchase the land in the name of the complainant; that said agent fraudulently took the deed in the name of Josephine Goelz, and that complainant, as soon as he heard that the deed was in the name of Josephine, requested her to convey to him, which she refused to do. The prayer was, that a trust be declared for the use of the complainant, and that Josephine be decreed to convey to him. Josephine Goelz and William Goelz, Jr., each filed answers and denied the allegations of the bill.

On October 23, 1885, William Goelz, Jr., made a quitclaim deed for the south half of the land to John Jacobs, a brother-in-law, and on December 28, 1885, John Jacobs and his wife made a quit-claim deed for the same property to Louisa Goelz, wife of William Goelz, Jr. Each of said deeds stated a nominal consideration of one dollar. Josephine Goelz died intestate on or about the 18th day of April, 1886.

On June 20, 1887, the complainant filed a supplemental bill. Said bill made reference to the prior bill and answers, and replications to the latter; stated the execution of the two deeds of July 26, 1884, and of the deeds of October 23 and December 28, 1885, and alleged the death of Josephine Goelz. It charged that all of said conveyances were made without consideration, and in fraud of the complainant's rights. It made William Goelz, Jr., Carl August Goelz, Dorothea F. Grossman, August Grossman, and John Jacobs and his wife, defendants, and prayed for relief against them. Jacobs and his wife

filed disclaimers. Dorothea F. Grossman and her husband made default. Carl August Goelz, William Goelz, Jr., and Louisa Goelz filed answers in denial of the averments and charges contained in the original and supplemental bills. Various amendments were afterwards made to both the supplemental bill and the answers, but it is not deemed necessary to here specify what they were. The cause was referred to a master in chancery, who took the depositions and proofs and reported them to the court, with his conclusions.

The decree of the Superior Court of Cook county, entered December 26, 1893, granted the relief prayed for by appellee in his bills of complaint, and decreed that the title to the ten acres of land was held in trust by Carl August Goelz and Louisa Goelz, and required them to convey to appellee, as being the equitable owner of the land.

Appellants claim that all of the testimony given by appellee, himself, as a witness, is incompetent, and should be disregarded. They base this claim on section 2 of the chapter on "Evidence and Depositions," which provides that no party to any civil action, suit or proceeding shall be allowed to testify therein in his own behalf, when any adverse party sues or defends as the executor, administrator, heir, legatee or devisee of any deceased person. This contention is met by appellee by the counter claim that objections to the competency of a witness or to testimony can not be made for the first time in this court, and that no objections were interposed before the master as to the competency of Dr. William Goelz as a witness, nor as to the competency of his testimony, and that no objections or exceptions to his testimony were filed in the court below.

Neither the claim of appellee nor that of appellants is well grounded. It is to be borne in mind that the question, here, does not go to mere matter of informality or irregularity, which might be cured in the trial court.

The question before us concerns the legal competency of certain evidence, and the question arises, not in an action at law, but in a suit in equity: In *Swift* v. *Castle*, 23 Ill. 132, this court said: "The question presented upon the trial before the chancellor, as well as in the appellate court, is, upon all the legitimate evidence in the cause, what decree should be rendered? The chancellor being the judge of both the law and evidence, the presumption is that in rendering his decree he will only regard that which is legal and pertinent. * * * It is the correct practice for the chancellor, after the evidence is heard, to regard no portion of it which is immaterial or illegal, and to decide the case alone on the legal evidence adduced. Such is believed to have been the uniform practice, which has been adopted from considerations of convenience, and is in no way calculated to hinder or delay the administration of justice, and no reason has been suggested, nor is any perceived, why it should be changed." In *Treleaven* v. *Dixon*, 119 Ill. 548, it was said: "In chancery cases the whole record, including all the evidence offered, is before us, and we are required to assume that all the incompetent evidence was rejected and all the competent evidence was admitted and considered on the final hearing. If there is competent evidence in the record sufficient to sustain the decree, it must be affirmed; if not, it must be reversed,—and this without regard to whether the chancellor may have been right or wrong in his views as to the competency of the evidence at the hearing." And to the same effect are *Stone* v. *Wood*, 85 Ill. 603, *Tunison* v. *Chamblin*, 88 id. 378, *Moore* v. *Tierney*, 100 id. 207, *Ritter* v. *Schenk*, 101 id. 387, *Smith* v. *Long*, 106 id. 485, *Gordon* v. *Reynolds*, 114 id. 118, and numerous other cases.

It is plain, however, that appellants ask too much when they insist upon excluding from consideration the whole of the testimony given by appellee in his own behalf. Appellants are not defending as heirs, legatees

or devisees of Josephine Goelz, deceased, but as immediate and remote grantees of said deceased. Consequently the case does not fall within section 2 of chapter 51 of the Revised Statutes. Appellee is a competent witness in the case, but, at the same time, much of his testimony is incompetent, and must be disregarded.

On grounds of public policy, and wholly independent of any question of interest or identity, neither husband nor wife could, at common law, testify to communications or conversations occurring between them during coverture; and this inability to testify continued, as to such communications and conversations, even after the marital relation was severed, either by divorce or by death. (1 Greenleaf on Evidence, secs. 254, 334, and following sections.) By section 5 of the act of 1867, (Laws of 1867, p. 184,) which was re-enacted in 1872 as section 5 of the act in regard to evidence and depositions, (Laws of 1871-72, p. 405,) this rule was relaxed, but only in respect to certain specified cases. In 1874 said section 5 was amended by the addition thereto of a proviso, to the effect "that nothing in this section contained shall be construed to authorize or permit any such husband or wife to testify to any admissions or conversations of the other, whether made by him to her or by her to him, or by either to third persons, except in suits or causes between such husband and wife." (Laws of 1873-74, p. 98; 1 Starr & Curtis' Stat. p. 1077.) This was a recognition and re-enactment of the above mentioned rule of common law, based on public policy, but confining its operation to cases other than suits or causes between the husband and wife. (*Mueller* v. *Rebhan*, 94 Ill. 142; *Munford* v. *Miller*, 7 Ill. App. 62.) In respect to this matter the cases of *Deniston* v. *Hoagland*, 67 Ill. 265, and *Galbraith* v. *McLain*, 84 id. 379, are not of controlling effect. *Deniston* v. *Hoagland* was decided in 1873, and the decision was expressly placed upon the statute as it stood prior to the addition

of the proviso; and *Galbraith* v. *McLain* was decided upon the authority of the *Deniston case*, and without any reference to the amendatory act of 1874.

In the suit at bar, Josephine Goelz, the wife, died in 1886, and her death was suggested in the supplemental bill filed in 1887, and her grantees made parties defendant. The evidence was taken and the cause heard several years after she had ceased to be a party to the litigation. Her administrator, if there be one, is not a party. Her conveyances to her two sons were mere quit-claim deeds, and even her estate has no interest in the result. It seems to us that necessarily the conclusion must be, that the testimony given by appellee in regard to conversations with and admissions by his wife is not competent and lawful testimony, and must be wholly excluded from consideration.

But even if such evidence was not excluded on the ground it is in contravention of the statute and of public policy, it would be entitled to but little weight. It is hardly credible that Josephine Goelz should have had the supposed conversations and should have made the claimed admissions, and yet there be no testimony other than that of appellee tending to prove them. The daughter, Dorothea, whose interests are adverse to those of her brothers, was living with her parents at the time of the transactions involved, and she nursed and took care of her invalid mother during the many years of her sickness, and yet neither she nor any other witness testifies to any of the conversations or admissions, or to any like admissions or statements.

The record is quite voluminous, and is largely taken up with the examinations and cross-examinations of Dr. Goelz and William Goelz, Jr. Upon most of the important and material points involved in the issue there is an absolute contradiction between these two witnesses. The substance of the claim of appellee is, that he furnished the moneys, notes and securities used in buying and pay-

ing for the land; that his son, as his agent, promised to buy in the land in his name, but fraudulently bid it off in the name of Josephine Goelz, and had the deed made to her, and that he, appellee, was not advised of these facts until a year later. The substance of the claim of William Goelz, Jr., is that he purchased the land for himself, and that it was so understood by both his father and mother; that he borrowed from Bernard F. Weber the $300 to make the cash payment at the time of the bid, and borrowed from his mother the Deinzer note for $1300, the Zender note for $600 and the Weber note for $500, upon which to raise money to pay the whole $2400 purchase money, and that he had the deed made to his mother in order to secure the repayment of the $2400 borrowed from her.

In our opinion neither of these claims is the true theory of the actual, transaction. The evidence shows that at the trustee's sale, on the 12th day of February, 1880, the land was struck off to Josephine Goelz for $2400, and that a deed of conveyance was made to her for the premises. This, *prima facie*, vested in her both the legal and the equitable title. Whose money or property was used in paying for the land? William Goelz, Jr., testifies that he made the cash payment of $300 on the day of sale with money borrowed from Bernard F. Weber. Weber testifies that the $300 was a payment on a note of $500 that he owed for borrowed money; that he does not remember whether the note was payable to Mrs. Goelz or William Goelz, Sr.; that he thinks he got the borrowed money at the house of Mrs. Goelz, but is not positive, and may have got it from William Goelz, Sr. Dr. Goelz testifies positively that he never had a note from Bernard F. Weber or Michael Weber for $500 or any other sum, and that he never loaned either of them any money, and he does not claim that the notes which he says he turned over to his son a few days after the sale included a note against Weber. Mrs. Goelz very probably had saved the

$500 from the rents of the Bowmanville property and the North Wells street property, both of which she had owned since 1875. We think it quite certain, from the evidence, that the $500 Weber note belonged to Mrs. Goelz, and that not only the $300, but also the remaining $200 secured by that note, were paid as a part of the purchase money of the land in controversy. We also think that the balance of the purchase money was paid with moneys procured by selling to Weber the Deinzer note, the Zender note and the Beil note, there being also some back taxes, etc., to pay, and that all of these last mentioned notes were owned by and were the property of Dr. Goelz, the appellee.

The doctor also testifies that he handed the notes to his son a few days after the trustee's sale, and at the same time gave him $700 in money to pay on the land. The son positively denies that any such money was turned over to him. The doctor was sixty-nine years of age when his deposition was taken, and we think, from his testimony, that this transaction has become mixed up in his mind with a former transaction, where he had to advance $700 to pay off a prior mortgage on land on which he held a second mortgage. At all events, the $700 can not be traced into the purchase money paid for the land. The purchase money was substantially all paid by four certified checks drawn by Weber, two payable to Knauer, the trustee, or order, and the other two payable to Daniel Donegan, the holder of the notes secured by the trust deed; and the evidence of Weber shows that these checks were all given for the notes delivered to him by William Goelz, Jr. The checks above mentioned bear date, respectively, February 12, 1880, March 5, 1880, April 8, 1880, and April 22, 1880. The trustee's deed to Josephine Goelz bears date February 12, 1880, but the certificate of acknowledgment shows that it was not acknowledged until April 28, 1880, and it was not filed for record until July 19, 1880. The land was sold under the trust deed, for

cash. The presumption must be that the deed was not delivered until payment was made of all of the purchase money bid at the sale. Therefore the doctrine of *Alexander* v. *Tams*, 13 Ill. 221, *Reed* v. *Reed*, 135 id. 482, and other like cases, that a resulting trust must arise, if at all, at the time of the execution and delivery of the conveyance, and that it is not possible to raise such a trust by the subsequent application of the money of a third person in satisfaction of unpaid purchase money, does not control this case. The transfer of the notes was here a part of the original transaction.

The general rule is, that where the purchase money of land is paid by one person and the title is taken in the name of a third party, there such third party holds the title in trust for him who pays the purchase money. But the purchase of land by a parent in the name of a child, or by a husband in the name of his wife, will, *prima facie*, be presumed to be an advancement or settlement, and not a trust. This latter presumption may be either supported or rebutted by proof of antecedent or contemporaneous acts or facts, or by proof of any acts or facts so soon after the purchase as to be fairly considered a part of the transaction. *Maxwell* v. *Maxwell*, 109 Ill. 588; *Cartwright* v. *Wise*, 14 id. 417; *Taylor* v. *Taylor*, 4 Gilm. 303; 10 Am. & Eng. Ency. of Law, 18, 19, and authorities cited in notes.

There are very many facts in this record that tend to prove that appellee intentionally had the title placed in the name of his wife, and that tend to sustain and uphold the *prima facie* case in favor of the wife. Some of these we will briefly mention.

The legal title was vested in the wife for more than four years, by a duly recorded deed, before the husband raised any objection or made any claim, and then not until his affections had become alienated from her and his sons, and his feelings were hostile to them all, and he had learned that his wife had made some disposition

of the estate for the benefit of such sons.   According to his own testimony he knew, for more than three years of this time, that the deed to the land had been made to his wife, and according to the testimony of his son and the documentary proofs he was advised of that fact from the very first.

On July 24, 1880, five days after the deed to his wife was filed for record, he effected an insurance for the term of five years upon the dwelling house and barn located on said land, in the name of his wife, and signed the installment note given for unpaid premiums immediately under her signature.

The fact that a considerable amount of his wife's money, as well as his own, went in to make up the purchase money paid for the land, tends to prove that it was the intention that she should have a beneficial interest therein.

In 1875 he owned a lot at Bowmanville, and also a lot on North Wells street, in Chicago, and he conveyed both lots to his wife, in consideration of love and affection and one dollar, and ever after recognized and acknowledged both lots to be her property.   This renders it at least likely that when, five years later, he furnished part of the purchase money for buying another piece of real estate, he would be desirous of having both the legal and the equitable title vested in her.

Since the purchase of the land, in 1880, the taxes thereon have sometimes been paid in the name of William Goelz, sometimes in the name of Josephine Goelz, and sometimes in the name of William Goelz, Jr.   At the time of the purchase the premises were in possession of one Frank, as a tenant.   Said Frank took a written lease for them for a term expiring January 1, 1881.   The lease was signed by William Goelz, Jr., but the rent was payable in a single sum, at a stipulated time, at the office of Dr. Goelz, and was paid to him.   Ever since the expira-

tion of the lease the land has been occupied by William Goelz, Jr., and Carl August Goelz.

The rule is well settled that where the evidence is doubtful, and not entirely clear and satisfactory, or is capable of reasonable explanation upon theories other than that of the existence of an implied or a resulting trust, such trust will not be held to be sufficiently established to entitle the beneficiary to a decree declaring and enforcing the trust. (*McGinnis* v. *Jacobs,* 147 Ill. 24; *Strong* v. *Messinger,* 148 id. 431.) The evidence in this record falls far short of establishing such a case as is demanded by this rule.

The parties who are the real owners of the land, each of a moiety, are the appellants Carl August Goelz and Louisa Goelz. In his answer Carl August Goelz denies all the allegations of the original and supplemental bills; denies that the complainant has any interest whatever, legal or equitable, in the land, and avers that his mother, Josephine Goelz, was the lawful owner of the premises and that she conveyed to him. In her answer Louisa Goelz denies that the complainant has any interest whatever in the land, and claims that her husband, William Goelz, Jr., conveyed to her one-half of the land in consideration of natural love and affection, and that her said husband was the owner thereof "by virtue of a deed to him from his mother, Josephine Goelz." The evidence sustains these defenses. It matters not that the trust set up in the answer of William Goelz, Jr., one of the co-defendants, and of which he claimed to be the beneficiary, is not made out.

The decree of the Superior Court of Cook county was erroneous. It is reversed. The cause is remanded, with directions to dismiss the original bill and the supplemental bill for want of equity, at the cost of the complainant therein.

*Reversed and remanded.*