M. M. STEPHENS, Appellant, *vs.* THE ST. LOUIS UNION TRUST COMPANY *et al.* Appellees.

*Opinion filed October 28, 1913—Rehearing denied Dec. 3, 1913.*

1. PLEADING—*a negative plea in equity is a legitimate mode of defense.* A pure plea in equity is one which merely states matters not apparent on the face of the bill and relies on such matters as a bar to complainant's claim; but a negative plea relies solely upon some matter alleged in the bill upon which the complainant's rights depend, and is a legitimate mode of defense.

2. SAME—*defense that the complainant did not pay purchase money may be raised by plea.* Where a bill to establish a resulting trust in land alleges that complainant furnished the money to pay for the land, the defense that he did not furnish such money may be raised either by answer or negative plea.

3. SAME—*a plea denying that complainant furnished purchase money does not shift burden of proof.* The complainant in a bill to establish a resulting trust has the burden of proving his allegation that he furnished the purchase money, notwithstanding the allegation is denied by a negative plea instead of by answer.

4. SAME—*court may allow answer to be withdrawn and pleas to be filed after referring cause to master.* Under section 39 of the Practice act it is not an abuse of discretion for the trial court to permit the answer to be withdrawn and pleas to be filed after the cause has been referred to the master and the evidence been partially taken.

5. TRUSTS—*resulting trust arises, if at all, when legal title is taken.* A resulting trust arises, if at all, when the legal title is taken, and no oral agreement or payments made before or after such time will create such a trust, but the trust must result from the transaction itself.

6. SAME—*when resulting trust is not established.* A resulting trust will not be held to have been sufficiently established where the evidence is not entirely clear and satisfactory or is capable of reasonable explanation upon theories other than that of the existence of such a trust.

7. SAME—*when a court of equity will not declare a resulting trust.* A court of equity will not declare a resulting trust in land where the evidence is not clear in support of the bill, especially where no claim has been set up during the lifetime of the alleged trustee but is first urged against his heirs.

APPEAL from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding.

TURNER & HOLDER, for appellant.

TRAUTMANN, FLANNIGEN, BAXTER & HAMLIN, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed November 18, 1910, in the circuit court of St. Clair county, for the partition of about twenty-three acres of land in that county, involving the question as to whether a resulting trust existed from the purchase of said real estate. After a hearing before the master the court sustained a portion of his findings and overruled the remainder and entered a decree dismissing the bill for want of equity. From that decree M. M. Stephens has appealed to this court.

In 1898 an electric road was constructed connecting East St. Louis and Belleville, running along the turnpike road. While the line was being constructed F. F. Espenscheid and M. M. Stephens were induced to become interested in the matter and furnished a considerable portion of the money for its construction. It was decided to locate the power house of the railroad about midway between the two cities, at the bluffs dividing the high land from what is known as the American bottom. It was found necessary

to purchase more land than was needed for the use of the power house as the owners would not sell the small portion needed for that use, and the twenty-three acre tract here in question was purchased at that time, a small part of it being used for the power house. The remainder of the twenty-three acre tract was enclosed with a fence, and on it were erected a dance hall and other buildings for the purposes of a park. The land was conveyed by the former owners to George Townsend, and by him to Thomas L. Fekete as trustee, and by him to William S. Forman and Fred F. Espenscheid, May 3, 1899. May 5, 1899, the last two named persons conveyed to one Colson, who placed a mortgage of $8000 on it, and then re-conveyed it, subject to said mortgage, to Forman and Espenscheid. On the same day they leased said premises to said Colson, who was apparently acting as the agent of a brewing company, for a park. In consideration of said leasing Colson assumed the payment of the mortgage and taxes and agreed to perform other covenants. Later on, Forman and Espenscheid leased the premises to the St. Louis Brewing Association, to be used as a park, under terms similar to those in the former lease. Espenscheid's one-half interest was afterward acquired by other owners. Forman died on June 10, 1908, intestate, leaving his widow, Esther A. Forman, and three children. At that time he was seized of the legal title to an undivided half of said twenty-three acre tract, except the small portion occupied by the power house and tracks of the railroad company.

Appellant, Stephens, alleged in his bill, and attempted to prove, that Forman held title to this undivided half interest, not for himself, but as trustee for appellant; that appellant had furnished the purchase money, the title being taken in Forman's name as a matter of convenience. Appellees first filed an answer to the bill of complaint, denying that appellant had paid the purchase money for the land

and also charging him with *laches* in asserting his claim. The matter was then referred to a master and a large part of the proof taken. Appellant introduced in evidence the pleadings and final decree in another suit which appellees believed constituted an estoppel to this litigation. They thereupon, by leave of court, filed a special plea, setting up the former proceedings and pleading an estoppel thereunder. The answer was thereafter formally withdrawn and by leave of court two additional pleas were filed, one denying that appellant had furnished the purchase money and the other averring that he was guilty of *laches*. A motion made by appellant to strike the pleas from the files was denied. The first special plea was set down for hearing and overruled by the court. The cause was referred back to the master on the two additional pleas and replications thereto and the evidence heard was ordered to stand as a part of the evidence in the cause, the issues being the same under the two special pleas as made originally by the answer. This re-reference was made without objection by any of the parties. The master thereafter reported, finding that the appellant furnished the purchase money and that he was not guilty of *laches*. On exceptions the chancellor sustained the master's finding that appellant was not guilty of *laches* but overruled the finding that he had furnished the purchase money, and entered a decree dismissing the bill for want of equity.

It is contended by appellant that the trial court erred in not striking the second and third pleas from the files; that the defense as set out in both pleas should have been made by an answer. In many cases the same matter may be insisted on as a defense either by plea or answer. (Story's Eq. Pl.—10th ed.—sec. 439; 16 Ency. of Pl. & Pr. 588.) While the defense raised by the second plea could have been made by answer it was properly raised by plea. "The defense proper for a plea is such as reduces the cause, or some part of it, to a single point. * * * A plea, in order

to be good, whether it be affirmative or negative, must be either an allegation or a denial of some leading fact, or of matters which, taken collectively, make out some general fact which is a complete defense." (Story's Eq. Pl.—10th ed.—sec. 652.) A pure plea in equity is one which merely states matters not apparent on the bill and relies on such matters as a bar to the complainant's claim. It is not always true, however, that a plea presents matter not apparent on the face of the bill. A negative plea introduces no new fact, but relies solely on some matter in the bill upon which complainant's rights depend. (16 Cyc. 291; 16 Ency. of Pl. & Pr. 591.) It was formerly questioned whether negative pleas were a legitimate mode of defense, but now they are allowed without question. (Story's Eq. Pl.—10th ed.—sec. 668; 16 Cyc. 291, and cases cited.) Here the material allegation of the bill was that appellant furnished the money to purchase the land in question. The second plea, negative in character, was a traverse of that allegation.

It is further urged that if the second and third pleas were held sufficient, then the burden of proof shifted to appellees. This might be true as to the third plea of *laches,* which would have to be proved by evidence *dehors* the record, but not true as to the second plea. The burden of proof, in equity as in law, rests upon those who have the affirmative of an issue. The complainant, in equity, has the burden of proving the allegations of his bill not expressly admitted. (16 Cyc. 930.) As a general rule, the burden of proof rests upon that party who would be defeated if no evidence at all were offered. (11 Am. & Eng. Ency. of Law, 535; Jones on Evidence,—2d ed.—chap. 6; 1 Words and Phrases, 905; *Supreme Tent K. O. T. M.* v. *Stensland,* 206 Ill. 124.) The second plea denied the allegation of the bill that the purchase money was paid by appellant. The affirmative of that issue was upon appellant,

whether the denial of that allegation was made by plea or answer. If the trial court was correct in finding that the evidence did not show a resulting trust, then the second plea was properly sustained and the bill dismissed for want of equity. The trial court upheld the contentions of appellant as to the third plea of *laches*, and no cross-errors having been assigned, that plea need not be considered.

It is further contended that the court erred in permitting appellees to withdraw their answer and file pleas after the matter had been referred to a master and the evidence partially taken. By section 39 of the Practice act the plaintiff or defendant is allowed to change, by amendment, either the form or substance of any pleading or proceeding, to enable him to sustain his action or make his defense. There was no abuse of the trial court's discretion in permitting the withdrawal of the answer and the filing of the pleas. We find no error in the rulings on the pleadings.

The principal question raised in the briefs is whether or not the proof shows that appellant furnished the purchase money for the half interest in the twenty-three acre tract in question, the legal title to which was standing in the name of William S. Forman at the time of his death, thus making it necessary to hold, if the bill be sustained, that a resulting trust existed in favor of appellant. A resulting trust arises, if at all, the instant the legal title is taken and the legal title vests. No oral agreements or payments before or after will create such a trust, unless, at the moment the title passes, the trust results from the transaction itself. *Wells* v. *Messenger*, 249 Ill. 72; *Strong* v. *Messinger*, 148 id. 431; *Keuper* v. *Mette*, 239 id. 586; *Patterson* v. *Patterson*, 251 id. 153; *Lord* v. *Reed*, 254 id. 350.

William S. Forman had been for many years an attorney practicing his profession in East St. Louis. Appellant, at the time the railroad was constructed, was mayor of that city. The evidence showed that he had large business in-

260 — 24

terests, and Forman was his attorney in most, if not all, of them, giving a large part of his time thereto. W. N. Horner and William S. Reed were interested in the railroad at the time it was being constructed and met Forman and the others frequently. They testified that they understood from Forman and others that he was not the owner of the half interest of the property in question,—that he was acting in that transaction for Stephens. It was clear, however, from the testimony of both these witnesses, that they were not familiar with the deeding of the property from Fekete to Espenscheid and Forman and did not know who furnished the money for the half interest that was deeded to Forman.

G. B. Webster, an attorney of St. Louis, testified that Espenscheid had advanced for the purchase of this property more than his half of the money, and had a claim against Forman which he assigned to L. B. Stephenson, who was interested in the construction of the road previous to the bringing in of Espenscheid and Stephens. Webster further stated that, acting for Stephenson, he went to see Forman to collect the claim, and that Forman said that the witness would have to see appellant about it; that appellant was the one interested in it, and that he (Forman) had nothing to do with it; that thereupon Webster went to Stephens about the claim and the latter gave him a check for the amount. He states in one part of his testimony that the excess paid by Espenscheid which he was trying to collect was $50, and in another $550. The receipt he gave Stephens at the time, to settle the alleged claim, was $433.79. This receipt was dated December 22, 1902, and was signed by Webster, for Stephenson. Forman, according to Webster's testimony, had nothing to do with it, and therefore it was not properly admissible in evidence, being a mere self-serving statement. The letters from Stephenson to Stephens on this subject were also not proper evidence for the same

reason. This testimony, by itself, clearly would not, show that Stephens furnished the purchase money, for it referred to a time three years after the land was purchased.

Charles A. Malacek, a real estate dealer in St. Louis, testified that he received a check from Stephens for $2500 at the time the land was purchased and while he (Malacek) was acting as the agent of Espenscheid. He claimed that this check was applied as a part of the purchase money for the land, but stated that all he knew about the matter was what Espenscheid had told him. Espenscheid, as well as Forman, was dead before this litigation was instituted. The check was introduced in evidence and was dated December 20, 1898, while the property was deeded to Forman and Espenscheid May 3, 1899, the deed being recorded May 5, 1899. Neither the testimony of this witness nor of any other explains how this check came to be issued December 20, 1898, when the deed was not executed until five months after.

William Baum, formerly an attorney but later in the coal business at Shelbyville, Illinois, testified that Forman told him several times that all the business he was doing in relation to the electric railway was done for mayor Stephens and that the land belonged to Stephens and Espenscheid. He testified he had these conversations with Forman in January, 1899, but further stated, on cross-examination, that he did not know anything about who paid the purchase money for the land.

C. M. Forman, a brother of W. S. Forman, testified for appellant that about a month before his brother's death they were getting up a schedule of W. S. Forman's property to be presented to a bank in St. Louis with reference to a loan; that at first this twenty-three acre tract was included in the schedule, and afterwards W. S. Forman said to the witness that that land should be taken out, as it did not belong to him but to Stephens. It appears from the evidence C. M.

Forman had had considerable trouble with the administrators of the estate of W. S. Forman in regard to an alleged claim that he held against the estate. The one who was administrator at the time of this litigation testified that C. M. Forman had told him that the property in question belonged to his brother, William S. Forman, and that the complainant, Stephens, had no interest in it, and that he (C. M. Forman) would be a valuable witness in the case for the estate. Forman himself denied having made such statements to the administrator.

A paper was offered in evidence which it was claimed was a carbon copy of a letter written by W. S. Forman to one A. H. Bachmann. It was testified that this copy was found in W. S. Forman's letter files after his death. It was dated June 8, 1904, and after stating that Bachmann had purchased what was known as the park property and that the time of redemption was about to expire, the letter continued: "This is partly in my name, but I have no interest in it except to protect a friend." The copy was signed, "W. S. Forman." It is not, however, claimed that the signature was his but that it was written by his stenographer. The original of this letter was claimed to have been lost. Bachmann himself testified that he received a letter from Forman, but he would not undertake to testify to its contents and was not positive whether this copy was a correct copy of the letter he had received.

The records of the railroad company were introduced, showing that the board of directors, on April 3, 1899, authorized the president, F. F. Espenscheid, to acquire the twenty-three acres of land at the bluffs for the purpose of a park and lease the same. There was also introduced in evidence a bill, answer and decree in the case of Caroline Bircher and W. S. Forman against the St. Louis Brewing Association and others, wherein it was alleged that Mrs. Bircher (as the assignee of the interest formerly owned by

Espenscheid) and Forman were the owners of the land. Some evidence was also offered showing that appellant had redeemed the property in question from the sale for taxes in 1904 and again in 1910. We find no evidence in the record that appellant was ever at any time in possession of the premises. Neither do we find any evidence that Stephens furnished the purchase money that was used in buying this tract at the time it was deeded by Fekete to Espenscheid and Forman, in May, 1899. The evidence shows that Forman not only represented appellant, but also all the other parties interested in the road, being a director and at one time president. The record is silent as to any compensation which he received for these services.

The record shows that appellant had much business with W. S. Forman with reference not only to this railroad but also to many other matters as well. The evidence offered by Webster as to the Stephenson transaction with Stephens, and the check testified to by Malacek, might have referred to business other than the furnishing of the purchase money for said twenty-three acre tract. The record is barren of any evidence as to what, if any, money was paid at the time Fekete deeded the land to Espenscheid and W. S. Forman. Whether the company furnished the money, or Stephens furnished any or all of it, or Forman furnished half or all of it himself, cannot be definitely ascertained from the evidence before us. It seems clear, however, that Forman was in possession of and managed this property from the time it was deeded to him until his death, the same as if he were the actual owner of half of it.

It has frequently been stated that where evidence is doubtful and not entirely clear and satisfactory, or is capable of reasonable explanation upon a theory other than that of the existence of an implied or resulting trust, such trust will not be held to be sufficiently established to entitle the beneficiary to a decree declaring and enforcing it. (*Goelz*

v. *Goelz,* 157 Ill. 33; *McGinnnis* v. *Jacobs,* 147 id. 24; *Pickler* v. *Pickler,* 180 id. 168.) In view of the evidence in this record, is it not as reasonable to suppose that Forman was deeded the half interest in this property for his services in connection with the management of the road as it is that he purchased it with money furnished by Stephens and held it as a trustee for him? The policy of the law requires that everything which affects the ·title to real estate shall be in writing and that nothing shall be left to the frailty of human memory or as a temptation to perjury. Whenever this policy has been departed from and parol evidence admitted, the courts have been careful to examine into all the circumstances which may affect the probability of the alleged claim,—as the lapse of time, the means of knowledge and circumstances of the witnesses,—and it will not grant the relief sought where the claim has been allowed to lie dormant ·for an unreasonable length of time or where the evidence is not clear in support of the alleged right, especially where no claim has been set up during the lifetime of the trustee but is first urged against the heirs, who may not be supposed to know anything about it. *Enos* v. *Hunter,* 4 Gilm. 211.

The record shows that appellant had an opportunity in a former suit, to which he himself and Forman were parties, to set up his ownership of the property here in question but did not do so. If he had such an interest, why did he not then assert it? The evidence here tending to show that appellant furnished the purchase money at the time of the purchase is too indefinite to be made the basis of a decree divesting the legal representatives of Forman of their title to this property.

The decree of the circuit court will be affirmed.

*Decree affirmed.* ·