(No. 22441.—■■■■■■)

ANNA WILEY, Appellant, *vs.* RICHARD DUNN *et al.* Appellees.

*Opinion filed October 24, 1934.*

BITHER & BITHER, for appellant.

KELLY & COHLER, (J. ROBERT COHLER, of counsel,) for appellees.

Mr. JUSTICE ORR delivered the opinion of the court:

Appellant, Anna Wiley, filed her bill in chancery in the superior court of Cook county seeking to have a resulting trust declared in her favor in a certain three-story apartment building in Chicago. The heirs-at-law of Beauregard Dunn, grantee of the premises in dispute, were made defendants. They filed their answers denying the allegations of the bill. The cause was referred to a special commissioner, who heard the evidence and found against the complainant. Exceptions to his report were overruled by the chancellor and a decree was entered dismissing the bill for want of equity. The cause is here on appeal, as a freehold is involved.

The sole question raised on this appeal is whether the chancellor erred in not sustaining exceptions of appellant

to the commissioner's report on the theory that the facts in evidence showed a resulting trust, in that she furnished the money with which to purchase the property in question, the title to which was taken in the name of Beauregard Dunn.

In 1923 appellant kept a rooming house at 3011 Prairie avenue, in Chicago. Dunn roomed there. He was variously employed as a bell-hop and red-cap. In 1926 he began to work for H. J. Coleman & Co., a real estate firm, as janitor and collector. He worked there until his death, on July 6, 1931. Frank L. Gale, a salesman formerly employed by Coleman & Co., testified that in the spring of 1923 he approached appellant to sell her the apartment house. Appellant wanted to buy it but on account of trouble with her husband she did not want to take title in her own name. Gale suggested that title be taken in the name of a third person. Accordingly appellant had Dunn named as grantee. She gave Dunn $200 earnest money, which he gave to Coleman & Co. when he signed the preliminary contract. The final contract for warranty deed was entered into on April 3, 1923. The contract price was $18,500, of which $2000 in cash was to be paid. Gale testified that on that day appellant, in his presence, took $1800 more from her trunk in the living room, gave it to Dunn, and told him to go to the Coleman office with Gale and sign the contract. The contract was executed in that office. The deal was closed for Coleman & Co. by John J. Doyle, an attorney at law, and the currency was handed to the company's cashier. Dunn signed the contract in his own name and assumed to pay the mortgage on the property. Gale was uncertain as to who was present when the $1800 was taken from the trunk. On direct examination he stated that Mrs. Wiley, Dunn, and one or two roomers, were present, but on cross-examination he stated that Mrs. Wiley and Dunn were all that he remembered being present when the $1800 was taken

from the trunk. He said he had not talked with appellant's lawyer about the case at any time, although the transaction occurred several years before he testified.

Charles J. Scherer testified for appellees that he had visited the property with Gale prior to the sale, for the purpose of making an appraisal thereof; that he talked with Dunn three or four times concerning the purchase of this property, and that he did not know that appellant had any interest in the sale.

Dora Shorter testified for appellant that she roomed with her at the time of the purchase of the property in question. She saw the money taken from the trunk and handed to Dunn. Her testimony conflicted in some details with that of Gale. Margaret Harrison also witnessed the exchange of the currency. These two witnesses also said they had not talked with appellant's attorney before taking the witness stand. Laura Ratliff testified for appellees that neither Mrs. Shorter nor Mrs. Harrison lived at appellant's house at the time the property in question was sold and the money given to Dunn. Appellant moved into the apartment about a year later, and there was evidence that she paid no rent.

Robert J. Drury, a dentist, testified for appellant that he had a conversation with Dunn about paying his dentist bill; that he told him he should pay sooner, as he owned the property in question; that Dunn told him the property belonged to Mrs. Wiley, and that his bills were paid out of his salary from Coleman & Co. Drury testified that he was no longer in business and that his records were destroyed.

Dr. John A. Feaman testified for appellees that he had done work on Dunn's teeth at the time Drury testified he was working on them. He testified that no other work had been done on Dunn's teeth and that they needed no other work. He introduced his records to show the work he had done.

Louis J. Holmes, a plumber, testified that Dunn always had to get Mrs. Wiley's approval before he had work done or before he paid the bill. Records were introduced to show that Holmes had been paid by Coleman & Co. for work done upon this property. This tended to contradict his testimony that he had done no work there except at the request of Dunn and Mrs. Wiley.

Upon the death of her husband Mrs. Wiley received two checks from the Metropolitan Life Insurance Company in the sums of $902.81 and $860. These were indorsed by Mrs. Wiley and by Dunn. The same was true of forty-two checks payable to Mrs. Wiley by the Illinois Children's Home and Aid Society. J. W. Manson testified he was present on March 11, 1931, when Mrs. Wiley gave one of the insurance checks to Dunn and told him to pay taxes and the water bill. Manson read with the aid of glasses, but did not have them when the check was passed and did not have the check in his hand.

Albert B. George, a former judge of the municipal court of Chicago, testified for appellees that he was Dunn's lawyer at the time he purchased the property, and that witness knew nothing of Mrs. Wiley's having any interest in the property. The memorandum opinion he made at the time was introduced in evidence. He had talked with Dunn on several occasions about the purchase.

Harold J. Coleman, president of Coleman & Co., testified that he knew appellant but that she never spoke to him about owning the property. He also said that he had gone with Dunn on several occasions to the Industrial State Bank and assisted him in making loans with which to pay the mortgage on the property. The members of the real estate company at all times treated Dunn as the owner and believed that he was the owner. They collected the rents for him and accounted to him for them. He re-paid the loans from the bank with money from his salary. Dunn had assumed the mortgage when the purchase was made,

and when it was re-financed in 1925 he again became personally liable for the amount due. After his death there was found in his safety deposit box about $260 in cash, canceled notes from the bank and canceled notes which had been secured by the mortgage. He paid the taxes and special assessments in his own name. Mrs. Wiley's husband died in the latter part of 1930 or early in 1931, but there is no evidence of a demand for a deed from Dunn, either, prior or subsequent to Wiley's death.

A resulting trust is created, if at all, at the instant of the taking of the title. (*Lord* v. *Reed,* 254 Ill. 350.) While a resulting trust may be established by parol testimony, the proof must be clear, strong, unequivocal, and so convincing as to lead but to one conclusion. (*Winkelman* v. *Winkelman,* 307 Ill. 249; *Kedas* v. *Kedas,* 342 id. 630.) In *Stephens* v. *St. Louis Union Trust Co.* 260 Ill. 364, we said: "It has frequently been stated that where evidence is doubtful and not entirely clear and satisfactory, or is capable of reasonable explanation upon a theory other than that of the existence of an implied or resulting trust, such trust will not be held to be sufficiently established to entitle the beneficiary to a decree declaring and enforcing it. (*Goelz* v. *Goelz,* 157 Ill. 33; *McGinnis* v. *Jacobs,* 147 id. 24; *Pickler* v. *Pickler,* 180 id. 168.) * * * The policy of the law requires that everything which affects the title to real estate shall be in writing and that nothing shall be left to the frailty of human memory or as a temptation to perjury. Whenever this policy has been departed from and parol evidence admitted, the courts have been careful to examine into all the circumstances which may affect the probability of the alleged claim—as the lapse of time, the means of knowledge and circumstances of the witnesses—and it will not grant the relief sought where the claim has been allowed to lie dormant for an unreasonable length of time or where the evidence is not clear in support of the

alleged right, especially where no claim has been set up during the lifetime of the trustee but is first urged against the heirs, who may not be supposed to know anything about it.—*Enos* v. *Hunter,* 4 Gilm. 211."

It was incumbent upon appellant to prove that she advanced the money at the time the title was taken in the name of Dunn, the grantee. The witnesses Gale, Shorter and Harrison have been contradicted by testimony which we cannot hold to be incredible. Shorter and Harrison were shown to have lived at other places than at appellant's rooming house at the time of the transaction in question. Scherer, who made the appraisal, said that Dunn was the purchaser. That contradicted Gale, who made the sale and who was shown to have been friendly with appellant. The grantee, Dunn, assumed the mortgage and made himself personally liable for a large sum of money. The evidence shows he possessed considerable business ability. It seems unlikely that he would so obligate himself if the property was, in fact, that of Mrs. Wiley, who did not sign any instrument that bound her to pay for the premises. The fact that he borrowed money to pay the mortgage also belies any claim that he was holding the title as trustee. We think the testimony of Drury, a retired dentist, was fully contradicted by another dentist, Feaman, who was still in business and who produced his records showing he, and not Drury, had done Dunn's dental work. The plumber's story that Dunn had to get appellant's approval for repairs was considerably weakened by the evidence that he had done work for Coleman & Co. on the building in question, especially since Coleman & Co. was Dunn's agent. The fact that several of appellant's checks were indorsed by Dunn and deposited by Coleman & Co. in different banks does not show that they were connected with the property in question. It is as reasonable to suppose that Dunn, who was employed by Coleman & Co., cashed the checks for her as an accommodation as to suppose that they were given to

pay for this property. No check was endorsed by Dunn before he began his employment with Coleman & Co.

Our examination of this record leads us to the conclusion that the chancellor was right. Under the circumstances, the evidence is not of that clear and convincing character which we have held necessary to establish a resulting trust. The decree is accordingly affirmed. *Decree affirmed.*