O. D. Corbridge, Elizabeth Corbridge et al., Plaintiffs-Appellees, v. Westminster Presbyterian Church and Society, a Religious Corporation, Defendant-Appellant.

Gen. No. 11,198.

Second District, First Division.
July 11, 1958.
Rehearing denied July 31, 1958.
Released for publication July 31, 1958.

Hyer, Gill & Brown, of Rockford, Charles F. Grimes, John Mann, and William B. Garrett, of Chicago (Stanton E. Hyer, and William B. Garrett, of counsel) for appellant.

Maynard and Maynard, of Rockford (James F. Maynard, of counsel) for appellees.

PER CURIAM.

On September 11, 1943, O. D. Corbridge acquired title to eleven and one-half acres of land located at the easterly outskirts of Rockford. The deed which Mr. Corbridge received evidencing his title, contained after the description of the premises conveyed, the following clauses; "To have and to hold the said premises above described with the appurtenances, unto the said party of the second part (Corbridge) his heirs and assigns forever; subject, however, to taxes for the year 1943 and to the following restrictions, to-wit: (1) For forty years hereafter, premises shall only be used for residential and agricultural purposes. However, churches or schools shall be considered residential purposes, and local retail business may be permitted after 10 years along the northerly 100 feet and the easterly 100 feet of the premises above conveyed. (2) The premises or any part thereof, shall not be sold or leased or occupied by any person or persons not of Caucasian race."

The land was thereafter platted as Westminster subdivision and by quitclaim deed, dated April 14,

1949, O. D. Corbridge and Elizabeth Corbridge, his wife, conveyed to Westminster Presbyterian Church and Society of Rockford "lots 6, 7, 27 and 28 as designated upon the plat of said sub-division." Following this description in said deed appears this clause: "Subject to building restrictions of record." These four lots are contiguous and comprise about one and one-half acres. In the spring of 1950 the construction of a church thereon was commenced and completed in November 1951. In January, 1957, the construction of an addition to the church property was commenced. The plans for this addition called for a flat roof and the construction of this proposed flat roof gives rise to this litigation.

The instant verified complaint was filed in the Circuit Court of Winnebago County on November 27, 1957, by the said O. D. Corbridge and Elizabeth Corbridge and eleven other persons who own lots in this subdivision. The complaint was directed against the Westminster Presbyterian Church and Society of Rockford and prayed that it be restrained from proceeding further with the construction of an addition to its church pursuant to its present plans which call for a flat top roof. The complaint recited the conveyance dated April 14, 1949, from Mr. and Mrs. Corbridge to the church and alleged that at the time of this conveyance no other lots in said subdivision had been sold and that there were in fact no building restrictions of record. It was then averred that the clause "subject to building restrictions of record" was intended by the grantors, to incorporate certain building restrictions, all of which were known and agreed to by the grantee and which were to be placed on record subsequent to the execution of said deed of April 14, 1949.

It was then alleged that among these building restrictions agreed to by the grantee were the following:

247

(1) That no building shall be erected on said lots until the design and location thereof has been approved in writing by a committee appointed by subdividers. (2) That no prefabricated building shall be erected upon the premises nor shall any flat roofed dwelling house be erected thereon, nor shall any . . . roll composition siding or roll composition roofing be used on the outside walls or roof of any building.

The complaint then alleged that the defendant had entered into a written contract for the construction of an addition to said church upon said premises and charged that said proposed addition was not in conformity with the foregoing restrictions. It was then averred that the church premises are located within a high class restricted residential area; that certain restrictions were included in all deeds to premises within said subdivision as part of a general plan for the benefit of the entire subdivision and that the building addition contracted for by defendant calls for a flat top roof which is in violation of said restrictions and will inject into said residential area a building completely out of harmony with the architecture of the other structures within the subdivision.

The answer of the defendant admitted that at the time it acquired title to its four lots in 1949 that no other lots in the subdivision had been sold or conveyed by Corbridge but denied that there were no building restrictions of record and averred that such restrictions were those contained in the deed to Corbridge under date of September 11, 1943. The answer admitted that the church premises are located in a good residential area and that defendant had entered into a written contract for an addition to its church and that such contract provides that this addition would have a flat roof. Substantially all the other allegations of the complaint were denied.

The issues made by the pleadings were heard by the chancellor resulting in a decree permanently enjoining and restraining defendant from constructing a flat top building upon the described premises. To reverse that decree defendant appealed to the Supreme Court and that Court, without opinion, transferred the case to this Court.

The evidence discloses that O. D. Corbridge acquired the eleven and one-half acre tract on September 11, 1943, and at that time the land was used for agricultural purposes; that it was subsequently platted as Westminster subdivision and the plat was recorded on April 7, 1949, at which time the only improvement thereon was some grading for road purposes. Mr. Corbridge testified that on April 18, 1949, he and his wife met with the trustees of the church, explained to the trustees that they desired to convey to the church the lots described in the deed dated April 14, 1949, and stated that he and his wife had considered inserting in the conveyance a clause to the effect that if the premises were not used for religious purposes the premises would revert to the grantors or their heirs but that after consultation with some church officials that clause was eliminated. Mr. Corbridge further testified that at this meeting he read the deed to the trustees and told them at that time that certain restrictions were being drawn up by an attorney but had not gotten to the printer. As abstracted this witness continued: "I told them what these restrictions were and that they were included in this deed and after I finished my explanation of the deed I handed it to the Chairman, Mr. Hovey. The restrictions which I discussed were ultimately reduced to printed form and included in the conveyance of all the other lots in the sub-division.—There were no questions raised about the restrictions which I discussed at this meet-

249

ing. They (the trustees) merely accepted the deed and thanked us for it."

Over the objection of counsel for defendant an undated deed acknowledged April 23, 1951, executed by O. D. Corbridge and Elizabeth Corbridge which conveyed to appellee Richard Borst lot 5 in said subdivision was offered and admitted in evidence as were two other deeds executed by O. D. Corbridge and Elizabeth Corbridge one dated November 1, 1952, and the other dated January 2, 1953, which deeds conveyed to appellant two additional lots in this subdivision. Each of these deeds contained the following provisions and restrictions:

"By delivery and acceptance of this deed and as a part of the consideration therefor and as part of the general plan for the benefit of the several lots and tracts of land in Westminster Subdivision and in order to establish and insure the continuation of a high class residential district, and in consideration of the mutual covenants entered into on the part of the owners and purchasers of other lots and tracts of land in said Westminster Subdivision the grantees herein and their heirs, executors, administrators and assigns do hereby agree that this conveyance shall be made subject to the following covenants, conditions and restrictions which shall run with the land and be binding upon the grantees and their heirs, executors, administrators and assigns, to-wit:

"1. No lot shall be re-subdivided into building lots smaller than originally platted.

"2. That until the year 1970 no building shall be erected on said lot except one private dwelling house which shall be used only for the purpose of a private one-family residence and one private garage and no building erected on said premises shall be used for any other purpose except as hereinafter stated. No stable, automobile trailer, or outbuilding, outside toilet or

250

other vault shall be placed, erected or maintained on any portion of said premises. The buildings on said premises and no part or whole of said premises shall at any time be used or maintained for commercial purposes of any kind or nature or for the purpose of storage of junk or for the purpose of conducting, using or maintaining therein or thereon any business or commercial enterprise.

"3. That no part of any residence, private dwelling or other building erected on said premises shall be · nearer than thirty-five (35) feet to the front line of said lot nor nearer than ten (10) feet to the side lines of said lot. The side line restriction shall not apply to a garage located on the rear one-fourth of said lot.

"4. That no building shall be erected on said lot until the design and location thereof has been approved in writing by a committee appointed by the subdividers. However, in the event that said committee is not in existence or fails to approve or disapprove said design or location within thirty (30) days then such approval will not be required provided the design and location on said lot conforms to and are in harmony with existing structures in the subdivision.

"5. The square foot area of the ground floor of any dwelling house erected on any lot in this subdivision shall be not less than Twelve Hundred Fifty (1250) square feet in the case of a one story structure and at least Eight Hundred Fifty (850) square feet in the case of a one and one-half or two story structure, exclusive of garages and porches.

"6. No prefabricated building shall be erected upon the premises, nor shall any flat roof dwelling house be erected thereon; nor shall any stone-coat or imitation brick or imitation shingle or other imitation of standard building materials be used in exterior wall construction. . . . No roll composition siding or roll

251

composition roofing shall be used on the outside walls or roof of any building.

"7. That no obnoxious or offensive trade shall be carried on upon said lot; nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood.

"8. If the grantees herein or their heirs, successors or assigns shall violate or attempt to violate any of the covenants and restrictions herein contained before January 1, 1970, it shall be lawful for any other person or persons owning any other lot or lots in said subdivision to prosecute any proceedings at law or in equity against the person or persons violating or attempting to violate any such covenant or restriction to either prevent them from so doing or recover damages, if any, for such violation. Provided, however, that the violation of any of the covenants or restrictions herein contained shall not cause the title to said premises to in any way revert to former owners.

"9. Invalidation of any one of these covenants by judgment or otherwise shall in no way affect any of the other covenants or restrictions and they shall remain in full force and effect."

In addition to the foregoing provisions and restrictions numbered 1 to 9 inclusive the two deeds executed by Mr. and Mrs. Corbridge by which they conveyed two additional lots in this subdivision to appellant contained this additional provision: "10. Said premises shall be used only for religious purposes by the Westminster Presbyterian Church and Society, or its successors. If and when said premises are used for any other purposes than for religious purposes, title shall revert back to the Grantors and their heirs. Said property shall never be mortgaged or sold, without the written assent of the Grantors and their respective heirs."

252

The record further discloses that prior to April 18, 1949 none of the lots in the subdivision had been sold and no restrictions of any kind appeared of record to the platted premises except those restrictions embraced in the deed of September 11, 1943. The first conveyance of any of the lots of the subdivision were the lots conveyed to appellant by the deed delivered April 18, 1949. Subsequent to that date and the completion of the church edifice in November, 1951, all the lots in the subdivision had been sold except two. On December 1, 1952 one of these lots was conveyed by Mr. and Mrs. Corbridge to appellant and on January 2, 1953 they conveyed the other lot to appellant. These deeds and all the others except the deed delivered April 18, 1949, contained the same restrictions which appear in the Borst deed heretofore referred to. Many of these lots are improved with substantial dwellings ranging in value from $35,000 to $60,000.

It further appears that in 1956 the church space became inadequate and plans were made for the construction of an addition with a flat top roof. Mr. and Mrs. Corbridge opposed the erection of this addition and on January 17, 1957, Mr. Corbridge wrote the chairman of the board of trustees of appellant a letter which, omitting the salutation and signature is as follows:

"As you know, Mrs. Corbridge and I were the subdividers of Westminster Subdivision and made a charitable gift of the land upon which Westminster Presbyterian Church has been erected. The original subdividers, as donors of the land for the Church, as members of the Church and residents of the neighborhood we are vitally interested in seeing the area maintained in the comparable manner established to date.

"We are deeply concerned that the Minister and some of the members of the Building Committee have

253

seen fit to approve the architectural plans for the church addition as presently drawn, first because the present plans call for the construction that is not wholly in harmony with existing structures in the subdivision; secondly, because it is designed with a flat top or roof, contrary to restrictions in the deed to the church; thirdly, because the single-story flat top building cannot be so located upon the property to best use the available space efficiently; fourthly, the type of structure planned will detract from the beauty of the present church building; and fifthly, the design and location of the planned addition were not submitted for approval to a committee appointed by the subdividers, as required by the deed granting the property to the church.

"The deed to the church provides expressly, among other things, that no building shall be erected until the design and location thereof has been approved in writing by a committee appointed by the subdividers, and that no flat top building be erected on the premises.

"We are writing to suggest reconsideration of the architectural plans at the earliest practicable time to avoid unnecessary cost before proceeding with construction and that before any construction is commenced that the plans be approved by a committee appointed by the subdividers.

"In the event the minister and boards of the Church do not see fit to comply with the letter and spirit of the provisions in the deed to the church as above suggested, but proceed in the manner now planned, we shall have no choice but to apply to the court for an injunction, and other appropriate relief.

"We hope and trust that the Minister and the Church Boards will reconsider the advisability of proceeding as planned and will consult with, and obtain the ap-

254

proval of, the committee appointed by the subdividers, of any plan for construction upon the church property.

"We stand ready at all times to work for the best interest of those who have purchased property in the subdivision and also for Westminster Church which has long been of deep and abiding concern in our lives."

Upon the hearing Mr. and Mrs. Corbridge were the only witnesses who testified on behalf of appellees. Both gave their versions of what transpired at the meeting of the trustees on April 18, 1949 when their deed was delivered to Mr. Hovey, chairman of the board. At this meeting five of the six persons who constitute the board of trustees were present. Mrs. Corbridge was a member and also secretary of the board. Appellant offered in evidence the minutes of this meeting prepared by Mrs. Corbridge and over the general objection of counsel for appellees as to the materiality and relevancy of these minutes they were admitted in evidence. These minutes were thereafter duly approved on December 18, 1949, and are as follows:

"Meeting of the Board of Trustees. April 18, 1949

"A meeting of the Board of Trustees was called for this date at 11:45 at Hicks restaurant, members to be guests of Mr. and Mrs. O. D. Corbridge. Mr. Benson, Ernest Westberg and attorney Guy B. Reno were also present. Trustees present were: Dave Hovey, Chairman, who presided at the meeting. J. Warren Rowland, Harmon Smith, Mary Henderson and Elizabeth Corbridge.

"Meeting was called to order at 12:05 by Dave Hovey. Mr. O. D. Corbridge made the following remarks in presentation of the deed for the church property: 'It is a pleasure for Mrs. Corbridge and me to give to Westminster Presbyterian Church the deed

255

for lots # 6, 7, 27 and 28 of the Westminster subdivision. This gift is a portion of our contribution toward the cost of building a new church. We do not desire any special recognition because it is only comparable to cash gifts of others. It was in this room last August that Dr. A. D. Keeler expressed the desire that no restrictions be placed on the title. Therefore, we are delivering a clear title to this land which is approximately 1½ acres. But, while we have made no restrictions we would like for it to go on record that we sincerely trust that Westminster Presbyterian Church will never sell any part of this land, but will always maintain it for use of religious purpose only. Therefore, to you, Mr. Dave Hovey, as chairman of the board of trustees of Westminster Presbyterian Church, we deliver this deed. And, to you, Mr. Ernest Westberg, as chairman of the Architectural Committee, we deliver a copy of the deed, which is desired by you for Dr. Keeler.'

"The chairman, Mr. Hovey, accepted the deed and plat in behalf of the Board of Trustees. Miss Mary Henderson moved that the Treasurer have the deed recorded and pay for same. Motion sustained. Mr. J. Warren Rowland moved that the Board of Trustees adopt the following resolution:

"WHEREAS, O. D. Corbridge and Elizabeth Corbridge have lately conveyed to this congregation by their deed, the following described premises, situated in the County of Winnebago and State of Illinois, to-wit: Lots 6, 7, 27 and 28 as described upon the Plat of Westminster Subdivision, situated in the County of Winnebago, and State of Illinois;

"AND, WHEREAS, this Board of Trustees has been directed by the congregation to erect a church building and make other improvements on said property, and to place a mortgage loan on part of the premises, not

256

to exceed $20,000.00, for the purpose of completing the church building to be placed on Lot 6;

"AND WHEREAS, the officers of the Board of Trustees desire to apply to the Board of National Missions of the Presbyterian Church in the United States of America, for a mortgage loan of $20,000.00 with interest at 4% per annum payable semi-annually.

"Now, THEREFORE, BE IT RESOLVED that this Board of Trustees pursuant to the request and direction of the congregation of the Westminster Presbyterian Church and Society of Rockford, do hereby accept the said gift of O. D. Corbridge and Elizabeth Corbridge, and express to them our sincere thanks on behalf of the congregation for the same.

"BE IT FURTHER RESOLVED that we hereby authorize the Building Committee to erect a church building on said premises in accordance with the plans and specifications of Mr. Beauser, Architect, Milwaukee, Wisconsin, and direct the President and Secretary of this Board of Trustees to negotiate for and complete a loan of $20,000.00 to be secured by mortgage on Lot 6 of said Westminster Subdivision, located in Winnebago County, Illinois, with interest at 4% per annum, payable semi-annually; and the President and Secretary of this Board be authorized on behalf of the Board and on behalf of the congregation, to execute and deliver said mortgage, and the note to be hereby secured, and to take all other steps which are necessary or convenient in placing said mortgage on said property, and securing said funds of $20,000.00 from the Board of National Missions of the Presbyterian Church in the United States of America. Motion seconded and carried. Upon motion of Mary Henderson the meeting adjourned."

Mrs. Corbridge identified these minutes as having been prepared by her and her evidence was that her

257

husband made a full and detailed explanation of the subdivision to those present at the meeting of April 18, 1949. She testified that her husband "made a very formal statement as he presented the deed," and with reference to the minutes which she prepared she said: "The part of the minutes of the meeting of April 18, 1949, starting with 'It is the pleasure of Mrs. Corbridge' is the formal statement he, (Mr. Corbridge) made before handing the deed over. I suppose it is exactly as he said it. It must have been so, because I put the quotation marks around it. To the best of my recollection it is a verbatim statement of his formal statement but that is not all he said."

On behalf of appellant three of the trustees, Mary Henderson, Harmon W. Smith and David Hovey, testified that they were present at the meeting held on April 18, 1949, and that Mr. Corbridge did read the deed but as they recalled his testimony Mr. Corbridge said nothing about any restrictions being imposed upon his property.

The foregoing is a fair resume of the evidence found in this record. It clearly appears that Mr. and Mrs. Corbridge desired to vest in the grantee title to the lots described in the deed and to accomplish that Mr. Corbridge delivered a deed to the chairman of the board of trustees of appellant. This deed properly described the premises which the grantors wished to convey and the words employed were plain, well known, unambiguous words. They need no construction. The deed speaks for itself. Conceding that at this meeting Mr. Corbridge did make a detailed explanation of his subdivision to the trustees as testified to by him and by Mrs. Corbridge, conceding, too, that he read aloud the deed he had had prepared for delivery to the trustees, conceding also that he told the trustees that certain restrictions were being drawn up by his attorney but had not been printed and conceding

258

further that he told the trustees that the restrictions which were being printed would be embraced in all other deeds which he would execute to those who subsequently purchased lots, still, it does not follow that those statements require that the deed be construed and when construed be held to embrace restrictions other than those expressly included therein, which were the restrictions then of record. This restriction clause in the deed delivered April 18, 1949 could have referred to no other restrictions than those contained in the deed of September 11, 1943, which is the deed under which Corbridge acquired title as these were the only restrictions of record at that time.

██ This deed delivered April 18, 1949, was a regular statutory quitclaim deed. The language used in it was not uncertain or indefinite. The parol evidence rule requires that "where there is no ambiguity in the terms used, or where the language of the instrument has a settled legal meaning, the instrument itself is the only criterion of the intention of the parties and its construction is not open to oral evidence." (Fowler v. Black et al., 136 Ill. 363, 373.) A deed speaks for itself and the only purpose of construction is to find out what it means, and that depends upon the language used. (Higinbotham v. Blair, 308 Ill. 568, 572.) To adopt appellees' theory that the use and building restrictions embraced in subsequently recorded deeds are incorporated in the deed delivered April 18, 1949, would be inconsistent with and vary the unambiguous language in that deed. It may be further observed that if those conditions are embraced in this deed delivered April 18, 1949, appellant violated its provisions in erecting the church.

Counsel for appellees contend that the effect of the admission of this parol evidence in the instant case was not to vary or contradict the terms of the deed to the church but solely for the purpose of ascer-

259

taining what building restrictions were referred to in that deed and when so ascertained, to determine the intention of the grantors relative thereto and then to give meaning thereto. Counsel insists that the words, "Subject to building restrictions of record," renders the deed, wherein these words appear, uncertain and counsel repeatedly asserts that at the time Mr. Corbridge delivered his deed to appellant there were no building restrictions of record, insisting that the restrictions embraced in the deed of September 11, 1943, were not "building" restrictions but "use" restrictions. We are unable to find any authority for any such distinction.

In Housing Authority v. Church of God, 401 Ill. 100 the Circuit Court of Gallatin County enjoined the trustees of the Church of God from erecting a church building on two lots in an Housing Authority addition to the City of Shawneetown. It appeared that James M. Oxford acquired title to these lots by a deed which provided in part that the lots were "to be used for residential purposes and not otherwise." Subsequently Oxford conveyed these lots to himself, Ross Glover and John Padgett, trustees of the Church of God. In affirming the decree of the Circuit Court, the Supreme Court in the course of its opinion held that an owner of real estate had the right to convey it subject to any condition or restriction he deems fit to impose, provided the conditions or restrictions are not against public policy and do not materially impair the beneficial enjoyment of the estate and that subsequent purchasers will be bound by such restrictions and that equity will enforce them by injunction. The court then stated that Oxford purchased the lots with full knowledge of the covenant or condition that they were to be used solely for residential purposes, and continued (p. 108) "Moreover, since the restriction

260

appeared in the chain of title, the public records gave notice to subsequent purchasers of the existence and binding force of the covenant. (Dolan v. Brown, 338 Ill. 412; Wiegman v. Kusel, 270 Ill. 520.) The deed of the Housing Authority to Oxford containing the covenant or condition restricting the use of the property sold for residential purposes being valid, it follows that the use of the three lots conveyed to Oxford, if devoted to church purposes, would violate the restrictive covenant."

In the instant case the deed of September 11, 1943, provided that the premises should only be used for residential and agricultural purposes. In the Church of God case the court treated a restriction to residential purposes as a building restriction. In our opinion the language employed in the deed delivered on April 18, 1949 "subject to building restrictions of record" referred to those covenants, conditions or restrictions embraced in the deed of September 11, 1943, and none others.

█ There is no merit in counsel's assertion that there were no building restrictions of record on April 18, 1949, when appellant acquired its deed from Corbridge. The deed of September 11, 1943 was of record and it was the restrictions contained in that deed that the langauge used in the deed delivered April 18, 1949, referred to. The complex series of restrictions appearing in the other deeds subsequent to the time appellant received its deed were not of record on April 18, 1949. To permit these restrictions to be substituted for those actually of record by parol evidence would be to add, material, substantial and important provisions to the deed delivered April 18, 1949. As said in Wiley v. Dunn, 358 Ill. 97 at p. 101: "The policy of the law requires that everything which affects the title to real estate shall be in writing and that nothing

261

shall be left to the frailty of human memory or as a temptation to perjury."

■ Counsel for appellees assert that they do not seek to reform the deed delivered April 18, 1949, and by their pleadings and evidence it is clear that what they seek to do in the instant case is to incorporate in this deed to the church the restrictions found in deeds subsequently executed to other grantees. This cannot be done but if we held that the same restrictions were incorporated in the deed delivered April 18, 1949, which appear in the subsequently executed deeds the only restriction we find is that no "flat roof dwelling house" could be erected upon the lots described. Nothing is said about a flat roof church or flat roof structure of any kind except a dwelling house. The law is well settled that all restrictive covenants must be strictly construed. (Labadie v. Morris, 303 Ill. 321, 323; Leverich v. Roy, 338 Ill. App. 248, 252.)

The restrictions of record at the time this deed of April 18, 1949, was delivered, are the restrictions imposed on the premises described therein. Those restrictions permitted the erection of this church and the structure now ready to be roofed. These restrictions were in harmony with the purpose of the grant and are consistent with everything that has been done by appellant.

The decree of the Circuit Court of Winnebago County is reversed and this cause is remanded to that court with instructions to dismiss the complaint.

Reversed and remanded with directions.