Ray REMILONG and Joyce Remilong,
Appellants (Defendants below),

v.

Dominic CROLLA and Catherine Crolla,
Appellees (Plaintiffs below).

No. 4715.

Supreme Court of Wyoming.

March 27, 1978.

Katherine H. Nitschke of Nitschke & Nitschke, Jackson, for appellants.

Paul O. Vaughn, Jackson, for appellees.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS, and ROSE, JJ.

GUTHRIE, Chief Justice.

Appellants prosecute this appeal from a judgment ordering them to remove certain trailers and mobile homes from lands which they own and permanently enjoining them and their successors or assigns from placing, or allowing the placement of, any such trailers or mobile homes upon these lands.

Appellants Remilongs were the original owners of the lands now owned and occupied by appellees Crollas and sold them the tract which they now own and where their home is located, but appellants retained a portion thereof, being an adjoining tract to which this injunctive action was applied. The tract which the Remilongs retained contains 2.9 acres. The adjoining tract sold to the Crollas is one containing approximately .88 acres upon which is located a house which Remilongs sold to Crollas for the sum of $50,000. Crollas assert that a condition of the purchase was that Remilongs would remove all the trailers or mobile homes from the tract which they retained and claim that the fact they have now moved trailers thereon greatly diminishes the value of the lands purchased and that these lands were purchased in reliance upon such promise and agreement. Additionally, they claim damages in the sum of $10,000. This judgment is based upon findings of fact and conclusions of law, which are as follows:

"FINDINGS OF FACT

"1. During late winter or early spring of 1974, Plaintiffs and Defendants entered into an oral agreement whereby Defendants would sell to Plaintiffs a certain parcel of property adjoining property owned by Defendants.

"2. Defendants promised and it was a condition of said agreement that Defendants would remove all trailers or mobile homes then existing on their remaining property and that they would never again permit or suffer the placement of trailers or mobile homes on said property.

"3. Pursuant to said agreement and prior to the consummation of the sale referred to, Defendants procured the removal from their property of all trailers and mobile homes.

"4. On May 28, 1974, Plaintiffs, acting in reliance upon the aforesaid promise or representation, purchased said property.

"5. Since the time of said purchase Defendants have placed and have allowed the placement of trailers and mobile homes upon their property adjacent to the property purchased by the Plaintiffs.

"6. That the placement and presence of said trailers on the property adjacent to Plaintiffs injures Plaintiffs by causing a diminution in the value of their adjoining property.

"Based on the foregoing Findings of Fact, the Court makes the following Conclusions of Law:

"CONCLUSIONS OF LAW

"1. The parties' oral contract was a valid and binding contract, a condition or term of which was that Defendants would remove any trailers or mobile homes on their property and never allow said structures to be placed on their property again.

"2. That said promise was in the nature of a restrictive covenant, running with the land, restricting the use of Defendants' land.

"3. It would be an unjust and unconscionable result and a breach of contract and a breach of a restrictive covenant if Defendants were allowed to place or allow the placement of trailers upon their aforesaid property.

"4. That a mandatory injunction should issue requiring Defendants to remove all trailers or mobile homes from their property and that a permanent injunction issue enjoining the Defendants, or their successors and assigns, from placing trailers on said property."

This matter presents two questions upon which our decision must be based, i. e., does an oral contract creating a restrictive covenant come within the statute of frauds? If such agreement is within the prohibition of the statute of frauds, may the effect thereof be avoided by the application of an equitable or promissory estoppel?

It is apparent that if the answer to this first question is in the negative, this judgment should be summarily affirmed. We do not find that this may be so answered, however.

Appellees concede an existent conflict of judicial opinion in this area,[1] and cite authority sustaining their position that such an agreement does not come within the statute. However, in our view, and after examining such authorities, it appears that these opinions are "result oriented" and that the logic upon which they are based is at least questionable. It may be suggested that these opinions ignore certain realities as to the possible effect of such restrictions upon the use, enjoyment, and value of the lands to which they are attached and that the courts may have been more interested in relieving what appeared to be onerous situations than in a proper application of the law. It is probable that the dangers of this apparent approach were in the mind of the court when it said in *Crosby v. Strahan's Estate*, 78 Wyo. 302, 324 P.2d 492, 496:

" * * * The tendency has been to restrict rather than enlarge and multiply the cases of exceptions to the statute, and the courts should not be tempted to turn aside from its plain provisions merely because of the hardship of the particular case. 49 Am.Jur. Statute of Frauds § 533, pp. 832, 833."

There is no reason now to disregard this caveat.

Appellants assert that the oral agreement which the court found to exist is within the prohibition of two subsections of the statute of frauds, § 16–1–101, W.S.1977:

"(i) Every agreement that by its terms is not to be performed within one (1) year from the making thereof;"

"(v) Every agreement or contract for the sale of real estate, or the lease thereof, for more than one (1) year."

Although there may be some apparent application of the first subsection of this statute, we shall not explore or discuss this because of the abundant authority which brings such an agreement within the fifth paragraph of the statute.

■ This court has not heretofore considered the question of whether a restrictive covenant is within the statute of frauds, although an easement for an irrigation ditch has been held to be an interest in real estate within the statute, *Linck v. Brown*, 55 Wyo. 100, 96 P.2d 909, 911. An agreement restricting the use of land is described in many cases and considered to be a negative easement, *Huggins v. Castle Estates, Inc.*, 36 N.Y.2d 427, 369 N.Y.S.2d 80, 330 N.E.2d 48; *Bennett v. Charles Corporation*, W.Va., 226 S.E.2d 559, 563; *Putnam v. Dickinson*, N.D., 142 N.W.2d 111, 124; *Fort Dodge, Des Moines & Southern Railway v. American Community Stores Corporation*, 256 Iowa 1344, 131 N.W.2d 515, 521. When its establishment is sought in equity it has been treated or described as an equitable estate or interest in land, *Turner v. Brocato*, 206 Md. 336, 111 A.2d 855, 861, and cited authorities. However, it is not necessary herein to categorize the nature of the interest created by a restrictive covenant because its real effect upon the use, enjoyment and value of the proper-

1. This writer deems it would serve no good purpose to set out at any length the several ways in which these contracts were treated and the various results flowing therefrom, but commends the reader to an examination of 5 Powell on Real Property, § 671, p. 144, et seq. (1976); 7 Thompson on Real Property, § 3169, p. 175, et seq. (1962 Repl.); 20 Am.Jur.2d, Covenants, Conditions, Etc., § 172, p. 731, et seq.; Annotation 5 A.L.R.2d 1316, 1318.

ty to which it may be attached is obvious. A statement appearing in *Wiley v. Dunn*, 358 Ill. 97, 192 N.E. 661, 663, is most applicable in this case:

" ' * * * The policy of the law requires that everything which affects the title to real estate shall be in writing, and that nothing shall be left to the frailty of human memory or as a temptation to perjury. * * * ' " (Quoting from *Stephens v. St. Louis Union Trust Co.*, 260 Ill. 364, 103 N.E. 190, 193; and cited with approval in *Corbridge v. Westminster Presbyterian Church and Society*, 18 Ill. App.2d 245, 151 N.E.2d 822, 831.)

This view is consistent with *Crosby v. Strahan's Estate*, supra, and only serves to implement and strengthen that holding. It may be more desirable, instead of categorizing such restrictive covenant as an equitable interest, equitable servitude, or a negative easement, to frankly recognize that such covenant does affect the title, use, and estate, and recognize it independently for what it is. At best, it could probably be classified as creating a type of equitable ownership or servitude. It would appear of particular importance that such restrictive covenants be classified as interests in land without reference to particular terminology because of their increasing importance and use in our modern-day society. We would then hold that this asserted agreement creating a restrictive covenant upon appellants' land was within the prohibition of the statute of frauds, *Frank v. Visockas*, 356 Mass. 227, 228–229, 249 N.E.2d 1; *Cottrell v. Nurnberger*, 131 W.Va. 391, 47 S.E.2d 454, 456, 5 A.L.R.2d 1298; *Drautman v. E. M. & L. Garage, Inc.*, 129 N.J.Eq. 545, 20 A.2d 75, 76; Annotation 5 A.L.R.2d 1316, 1320–1322; 5 Powell on Real Property, § 672, pp. 152–153 (1976); A.L.I. Restatement of the Law, Property, § 522, p. 3165 (1944). This does not, however, dispose of this case.

In defense of their judgment, appellees raise another proposition, i. e., if the statute of frauds does apply to this case appellants should not be allowed to rely upon it because of fraud or equitable or promissory estoppel, and the trial court apparently recognized that in its findings.

This case poses the direct question of whether equitable, or particularly promissory, estoppel may be used to defeat the statute of frauds and result in the creation of a restrictive covenant, a negative covenant, or equitable servitude upon the lands of the Remilongs. In *Crosby v. Strahan's Estate*, supra, this court examined and cited with approval authorities which expressed the view that the statute of frauds was an expression of "fixed legislative policy of the state" and that it was "absolutely necessary to preserve the title to real property from the chances, the uncertainty, and the fraud attending the admission of parol testimony." It further enunciated the caveat that the court should not be tempted to turn aside from its plain provisions merely because of the hardship of a particular case.

Since this is the first case before us involving the avoidance of the statute of frauds to effect the creation of such restrictive covenants, and realizing their increased use, their importance and necessity to present-day society, and the potential number of land titles which could conceivably be affected, this question must be approached with the greatest of caution.

Many authorities, in applying the principle of promissory estoppel, to avoid the provisions of this statute suggest that the purpose of the statute is to prevent suborned perjury in apparent recognition that this was at least one purpose which the statute of frauds no longer subserved. England partially repealed the statute of frauds because this necessity had been removed. See 68 Harv.L.Rev. 383 (1954). It is for this reason your writer finds helpful the application of the rules set out in many cases which involve the application of estoppel in cases which arise other than under paragraph 5 of our statute.

Some courts have met this problem squarely and held they would not by adoption of the doctrine of promissory estoppel avoid the legislative action embraced in the statute of frauds, *Tanenbaum v. Biscayne Osteopathic Hospital, Inc.*, Fla., 190

So.2d 777, 779. If a contract is clearly within the statute, to apply this doctrine of promissory estoppel is to repeal the statute, *Sinclair v. Sullivan Chevrolet Company*, 45 Ill.App.2d 10, 195 N.E.2d 250, 253, affirmed 31 Ill.2d 507, 202 N.E.2d 516. The rule has been recognized that the defense of the statute cannot be raised unless there is a misrepresentation that the requirements of the statute had been complied with or there had been a promise to make a written memorandum, *21 Turtle Creek Square, Ltd. v. New York State Teachers' Retirement System*, 5 Cir., 432 F.2d 64, 65, certiorari denied 401 U.S. 955, 91 S.Ct. 975, 28 L.Ed.2d 239.

█ Although this court has recognized the almost universal rule that restrictions upon the use of lands are not favored, we have also recognized that equity does have a role to play in limited circumstances, *Kindler v. Anderson*, Wyo., 433 P.2d 268, 271; *Metcalf v. Hart*, 3 Wyo. 513, 27 P. 900, 31 Am.St.Rep. 122, affirmed 31 P. 407; *Vogel v. Shaw*, 42 Wyo. 333, 294 P. 687, 75 A.L.R. 639; *Forde v. Libby*, 22 Wyo. 464, 143 P. 1190. We speak of limited circumstances because the declared legislative policy encompassed in the statute of frauds should be departed from only when such action is necessary to "avoid the fraud, and accomplish what justice and good conscience demand," *Metcalf v. Hart*, supra, 27 P. at 913. Also, see *Roberts Construction Company v. Vondriska*, Wyo., 547 P.2d 1171, 1181. To accomplish the purposes of the statute of frauds, it may be necessary for a court to uphold oral agreements, *Tucker v. Owen*, 4 Cir., 94 F.2d 49, 52.

█ In light of the fact that appellees could easily have avoided this problem by placing all commitments in writing, they bear a heavy burden to show why the court should come to their rescue, but they have sustained such burden in this case. The trial court's findings that the appellants' promise to remove all the trailers from the remaining property and not permit the further placement of trailers thereon, that the appellants took affirmative action in removing all such trailers at that time, and that the appellees relied thereon, were sustained by the evidence. This is sufficient to apply the doctrine of promissory estoppel, *Hanna State & Savings Bank v. Matson*, 53 Wyo. 1, 77 P.2d 621, 625, wherein this court cites § 90, Restatement of Contracts, and *Vogel v. Shaw*, supra. See also § 217A, Restatement of the Law Second, Contracts 2d, Tentative Drafts Nos. 1–7 (Revised and Edited 1973); cf., *Pickett v. Associates Discount Corporation of Wyoming*, Wyo., 435 P.2d 445, 447.

█ Appellants' denial of the existence of the contract and explanations of their conduct raised questions of weight and credibility which were properly the province of the lower court. We are not persuaded the trial court was clearly in error, *Arnold v. Jennings*, 75 Wyo. 463, 296 P.2d 989, 991.

We have no problem with the fact that appellees relied on a mere promise, as in *Johnson v. Soulis*, Wyo., 542 P.2d 867, 872–873, we considered allegations of fraud which were founded on promises of future action, and there is no need to repeat our discussion here.

█ Problems presented in this case as to the notice of the easement afforded future owners of this land are resolved by § 1–16–301, W.S.1977. This statute requires all judgments which affect title to be recorded by the county clerk of the county wherein the property is situated. As there is little doubt this judgment affects the title, notice to the world should be given.

For the reasons stated above, the judgment is affirmed.